## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA GAIL CRUMP,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Civil Action No.: 5:13-CV-01955-RDP** |
| | } | |
| **CAROLYN W. WILSON,** | } | |
| **Acting Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Patricia Gail Crump ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

On March 1, 2011, Plaintiff protectively filed applications for disability, disability insurance benefits, and SSI, alleging that her disability began on October 3, 2010. (R. 52, 98-99, 121). Both of Plaintiff's claims were initially denied by the Social Security Administration on March 23, 2011. (R. 60-64). On March 26, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") (R. 71-72). This request was granted, and Plaintiff received a hearing before Administrative Law Judge Mary Ann Poulouse on August 2, 2012. (R. 22). The

ALJ determined that Plaintiff was not under a disability within the meaning of the Act from October 3, 2010 through the date of the decision, August 24, 2012. (R. 10). Following the hearing, the Appeals Council denied Plaintiff's request for review (R. 1-4), making the ALJ's decision the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.     Statement of Facts

At the time of the ALJ's decision, Plaintiff was forty-eight years old. (R. 98). She completed some college and has past work experience as a cashier, contract administrator, and subcontract administrator. (R. 26-34). Plaintiff alleges she has had only one job in the last fifteen years before becoming unable to work. (R. 133). Plaintiff also claims her inability to perform work is a result of bipolar disorder, major depression, anxiety, paranoia, and borderline personality disorder. (R. 26). According to Plaintiff, these conditions have resulted in approximately twenty days per month in which she experiences depressive episodes. During these episodes, Plaintiff claims she is unable to get out of bed or perform activities. (R. 38).

In March 2010, seven months prior to the date Plaintiff alleged her disability began, she was hospitalized following an attempted suicide. (R. 191-96). After Plaintiff took an overdose of Tylenol PM, 3C antidepressants, and other medication, she was seen at the emergency room with symptoms including anxiety, crying, and an inability to sleep or eat well. (R. 192). During her seven day hospital stay, she was diagnosed with Adjustment Disorder with depressed mood. (R. 193, 196). Following her hospitalization, Plaintiff began formal mental health treatment at Mental Healthcare of Cullman. (R. 220). This treatment included seeing a therapist once a month and a psychiatrist about once every three months. (R. 38). Beginning in May 2010, Plaintiff was prescribed numerous psychotropic drugs, including Celexa, Cymbalta, Risperdal, and Trazadone.

(R. 185-86). On occasions during her treatment, Plaintiff's mood was occasionally described as being depressed, fearful, anxious, and irritable; however, her mood was most often described as normal or neutral and, occasionally, was described as happy. (R. 185-86). Despite Plaintiff's claims of experiencing depressive episodes approximately twenty days per month, her mood over the course of her treatment was, more often than not, described as neutral or normal. (*Id.*). Plaintiff reported that she was first diagnosed with depression in 1991 and later diagnosed with bipolar disorder. (R. 220). Additionally, Plaintiff reported a history of alcohol dependency but stated she had been clean for over three years at the time she began formal mental health treatment. (*Id.*).

On May 27, 2010, Plaintiff reported having conflicts with employees at work. (R. 272). Approximately one month later, she was placed on administrative leave for repeatedly calling in sick. (R. 266). On July 28, 2010, Plaintiff indicated she was doing better; however, she also reported increased anxiety when getting ready for work because she "hated" her job. (R. 261). In September 2011, Plaintiff started paralegal school and stated that she was doing well and "loved" her school. (R. 350-53). Later that year, Plaintiff told her therapist that she was not finishing her school assignments and that she was "just lazy." (R. 358). In April 2012, Plaintiff was unable to work or continue school because her depression had returned. (R. 374). However, in the most recent medical report, dated May 18, 2012, Plaintiff reported that she was "doing good," and her therapist praised her for continued success in combating depressive feelings. (R. 376).

A Vocational Expert ("VE") testified at the hearing (R. 7-21) that Plaintiff's previous experience, including the cashier position at Burger King, contract administrator, and subcontractor administrator, would each fall into the same Dictionary of Occupational Titles ("DOT") category of administrative officer or administrative assistant. (R. 42). After the VE was

3

given a hypothetical by the ALJ asking him to consider a person of Plaintiff's age, education, work experience, skill set, and residual functional capacity ("RFC"), the VE testified that there were other appropriate types of positions available that met these requirements, including office helper, mail room clerk, and housekeeper.[1] (*Id.*). The VE further testified that these light, unskilled jobs would allow, while still being able to retain employment, up to fifteen percent of work time off task and up to one day per month absent from work. (R. 43).

## III.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

---

[1] The VE testified to the following: according to the Department of Labor, Bureau of Statistics, there are approximately 1,400 office helper positions in the state of Alabama and approximately 93,400 in the nation, there are approximately 1,300 mail room clerk positions in the state of Alabama and approximately 131,000 in the nation, and there are approximately 7,400 housekeeping positions in the state of Alabama and approximately 887,000 in the nation. (R. 42).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ initially determined that Plaintiff met the insured status requirements of the Act. (R. 12). Beginning the five-step sequential evaluation process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 3, 2010, her alleged onset date of disability. The ALJ then found that Plaintiff's bipolar disorder and borderline personality disorder constituted severe impairments because they more than minimally impact her ability to perform basic work activity. (*Id.*). However, the ALJ also determined that Plaintiff's history of alcohol abuse constitutes a non-severe impairment because it does not more than minimally impact her ability to perform basic work activity. (R. 13). At step three of the

analysis, the ALJ determined that Plaintiff does not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (*Id.*).

In determining Plaintiff's RFC, the ALJ found that Plaintiff has "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled, with only occasional decision-making and coworker interaction, and no public interaction, tandem tasks, or fast-paced production-line work, requiring no more than brief supervision." (R. 14). After determining Plaintiff's RFC, the ALJ concluded that Plaintiff does not have the RFC to perform the requirements of her past relevant work, but considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 17). The ALJ found that Plaintiff has not been under a disability, as defined in the Act, from October 3, 2010 through the date of the decision. (R. 18).

## IV.   Plaintiff's Argument for Reversal

Plaintiff's entire argument for reversal rests on the question of whether or not the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms consistent with the pain standard set forth by the Eleventh Circuit. (Pl.'s Br. 5). Plaintiff alleges that the reasons the ALJ articulated for refusing to credit her testimony are not supported by substantial evidence. (*Id.*).  Plaintiff claims that the ALJ mischaracterized the evidence of her mental status exam by stating that she "repeatedly showed [she] had normal psychomotor activity, good concentration, attention within normal limits, and an intact short-term and long term memory," and failing to consider her longitudinal treatment history. (Pl.'s Br. 6). In support of this allegation, Plaintiff asserts that the deterioration in her mental state is evidenced both by her suicide attempt in March 2010 and the lack of an indication by any of her treating physicians that they believed she

did not suffer from debilitating mental symptoms. (Pl.'s Br. 7). Moreover, Plaintiff claims that the longitudinal medical record documents the severity of her symptoms, despite the inconsistencies regarding her RFC, medical status exams, and daily activities. (*Id.*).

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

**VI.    Discussion**

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence, and the correct legal standards were applied.

> **A.    The Reasons Articulated by the ALJ for Refusing to Credit Plaintiff's Testimony are Supported by Substantial Evidence.**

Plaintiff contends that the reasons the ALJ articulated for refusing to credit her subjective pain testimony are not supported by substantial evidence.  As Plaintiff correctly notes, the Eleventh Circuit requires the reasons articulated for refusing to credit a claimant's subjective pain testimony be supported by substantial evidence. *Hale*, 831 F.2d at 1012. If these reasons are not supported by substantial evidence, the claimant's pain testimony should be accepted as true. *Id.* Here, the ALJ articulated several reasons for refusing to credit Plaintiff's subjective pain testimony, and her reasons are also supported by substantial evidence. (R. 15-16).

First, the inconsistencies between Plaintiff's RFC and symptoms were evaluated by the ALJ in light of both Plaintiff's medical record and her subjective complaints of disabling symptoms. (R. 14-17). To prove disability based on subjective complaints, a claimant must provide, along with evidence of an underlying medical condition, either objective medical evidence that confirms the severity of the symptoms or evidence that establishes the underlying medical condition could reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a). The ALJ determined that Plaintiff's medically determinable impairments could be reasonably expected to cause her alleged symptoms. (R. 15).

The ALJ must evaluate the intensity and persistence of the alleged symptoms by considering any information the claimant has submitted about her symptoms, including information by a treating or non-treating source. 20 C.F.R. § 404.1529(c). Here, the ALJ found that the testimony submitted by Plaintiff concerning her symptoms was not entirely credible. (R.

15). Plaintiff had the RFC to perform a full range of work at every exertional level, except that she was limited to unskilled work that required no tandem tasks or fast-paced work and only occasional decision-making. (R. 15). This RFC is inconsistent with Plaintiff's testimony alleging that she experiences depressive episodes approximately twenty days per month where she cannot get out of bed or perform activities. (*Id.*).

Additional inconsistencies exist between Plaintiff's testimony and her medical status exams. Plaintiff contends that medical records provided from before her alleged onset date, October 3, 2010, support her testimony of the intensity and persistence of her symptoms. However, Plaintiff worked until October 2010, a fact that undermines at least in part her testimony regarding her symptoms prior to the onset date. *See* 20 C.F.R. § 404.1529(c)(3). Additionally, the medical status exams conducted immediately before and after Plaintiff's alleged onset date demonstrate improvement in Plaintiff's condition. (R. 254, 248). On September 28, 2010, Plaintiff reported "feeling good" (R. 254), and on October 28, 2010, Plaintiff said she was "doing okay" (R. 248). Over the course of the next two years, Plaintiff's status exams revealed occasional reports of depression and anxiety. However, these reports most often revealed normal or neutral results. (R. 348, 352, 358, 362, 364, 374, 376).

Despite the inconsistencies in her testimony and mental status exams, Plaintiff asserts that her testimony should be found credible because there is no indication that any of her treating physicians did not believe she suffered from debilitating mental symptoms. (Pl.'s Br. 7). However, a physician's silence does not translate into an opinion that a claimant is disabled. *See Lamb*, 847 F.2d at 703. As the Eleventh Circuit has noted, "[s]uch silence is equally susceptible to either inference, therefore, no inference should be taken." *Id.* There is no indication in the

record about the *physicians'* opinions regarding her credibility. Therefore, no inference should be taken.

Finally, Plaintiff's testimony contradicts other evidence of her daily activities. While Plaintiff testified that she cannot get out of bed for approximately twenty days per month during depressive episodes, the record regarding her daily activities does not support that assertion. (R. 35-40). As noted by the ALJ, Plaintiff testified at the hearing that she can cook occasionally, wash dishes using the dishwasher, clean the bathroom, and shop. (*Id.*). Additionally, Plaintiff testified she occasionally visits with others socially and has an incarcerated boyfriend who she has visited. Although not dispositive, this and other evidence regarding Plaintiff's activities show that the alleged pain and other symptoms are not as limiting as she alleges. 20 C.F.R. § 404.1529(c)(3); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

The inconsistencies between Plaintiff's testimony and the objective medical record are highlighted multiple times throughout the record. The record provides substantial evidence to support the finding that Plaintiff's testimony was not entirely credible because of the numerous inconsistencies which are sufficient evidence "as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). The ALJ evaluated Plaintiff's treatment as a whole, considering her therapy, medications, testimony, and work history. The court finds the ALJ properly articulate reasons for refusing to credit Plaintiff's subjective pain testimony, and those reasons are supported by substantial evidence, as required by the standards set forth by the Eleventh Circuit.

**B.    The ALJ Properly Articulated Reasons for Refusing to Credit Plaintiff's Subjective Pain Testimony.**

Plaintiff correctly states that the Eleventh Circuit requires the ALJ to articulate reasons for refusing to credit a claimant's subjective pain testimony. *Hale v. Bowen*, 831 F.2d 1007, 1012

(11th Cir. 1987). If an ALJ fails to articulate reasons for refusing to credit a claimant's testimony, then the ALJ, as a matter of law, has accepted that testimony as true. *Id.* Here, the ALJ articulated several reasons for refusing to credit Plaintiff's subjective pain testimony, including numerous inconsistencies between her testimony and the record. (R. 15-16).

Plaintiff contends that in considering pain testimony about her depressive episodes, the ALJ failed to consider her longitudinal treatment for her mental impairments. This contention is also off the mark. The ALJ did consider Plaintiff's medical record over the course of treatment for her mental impairments and properly cited the treatment as a reason for refusing to credit her pain testimony. When considered in light of Plaintiff's longitudinal medical treatment, the objective evidence was inconsistent with her allegations of disability because the mental status exams repeatedly demonstrated that Plaintiff had "normal psychomotor activity, good concentration, attention within normal limits, and an intact short-term and long-term memory." (R. 16, 230-31, 236-39, 244-47, 252-53).

The ALJ stated that although Plaintiff's medically determinable impairments could be reasonably expected to cause her alleged symptoms, including depressive episodes that occurred approximately twenty days per month, they are not credible to the extent they are inconsistent with her RFC. Moreover, the ALJ noted that Plaintiff's mental status exams and longitudinal medical record fail to show episodes of depression as frequently as twenty days per month. In fact, records related to Plaintiff's mental status exams, dated from March 10, 2011 until May 18, 2012, most frequently reveal that she had neutral or normal moods and no sign of physical pain or decompensation. (R. 16). Additionally, the ALJ noted the inconsistencies in the information Plaintiff provided regarding her daily activities. (*Id.*). For example, although Plaintiff testified that she often struggles to get out of bed (R. 38), the record reveals that by April 2011, Plaintiff

reported to her therapist that she was improving in daily living, further evidenced by her enrolling in college and obtaining two job interviews. (R. 326). Each of these inconsistencies was highlighted and discussed by the ALJ as reasons for refusing to credit Plaintiff's subjective pain testimony. And, each of the reasons articulated by the ALJ as a basis for refusing to credit plaintiff's subjective pain testimony are supported by substantial evidence.

**VII.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this Memorandum of Decision will be entered.

**DONE** and **ORDERED** this March 9, 2015.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE